IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JENNIFER PALMER,<br><br>    Plaintiff,<br><br>v.<br><br>ECAPITAL CORP., ECAPITAL ASSET BASED LENDING CORP. (formerly known as GERBER FINANCE INC.), MARIUS SILVASAN JONATHAN STAEBLER, STEVEN McDONALD AND CRIS NEELY, in their individual and professional capacities<br><br>    Defendants. | Civil Action No: 1:23-cv-04080-LGS |

**[PROPOSED] ORDER REGARDING**
**DISCOVERY OF ELECTRONICALLY**
**STORED INFORMATION**

1. **PURPOSE**

    (a)    This Order supplements all other discovery rules and orders. It governs discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules. Except as expressly stated, nothing in this Order affects the discovery obligations of Plaintiff Jennifer Palmer ("Plaintiff") or those of eCapital Corp., eCapital Asset Based Lending Corp., Marius Silvasan, Jonathan Staebler, Steven McDonald, and Cris Neely ("Defendants") (collectively, "the Parties") under the Federal Rules of Civil Procedure or the Local Civil Rules. Absent further agreement of the Parties or further order of this Court, the following parameters shall apply to productions of ESI.

2. **GENERAL PROVISIONS**

    (a)    **Proportionality.** Parties are expected to use reasonable, good faith, and

proportional efforts to preserve, identify, and produce relevant information consistent with Fed. R. Civ. P. 26(b)(1).[1]  This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery, and other parameters to limit and guide preservation and discovery issues. A party's meaningful compliance with this order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

(b)     **Preservation of Discoverable Information.** Each of the Parties shall take reasonable and proportionate steps to preserve discoverable information in its possession, custody, or control. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that only ESI created or received between May 17, 2018 and May 16, 2023 need be preserved.

(c)     **PRIVILEGE AND PRIVILEGE LOGS.**

(i)     The parties may withhold documents subject to a valid assertion of privilege from production, in whole or in part, by designating the documents privileged pursuant to a claim of attorney-client privilege, work product protection, or other applicable privilege or immunity. Within a reasonable time after the conclusion of document production, the producing party will produce a privilege log in computer searchable form setting out information sufficient to satisfy the requirements of Federal Rule of Civil Procedure 26(b)(5), identifying, at a minimum:

1. Bates number or other identifier;
2. Name(s) of the Document author(s);
3. Name(s) of the Document recipient(s);
4. Name(s) of the person(s) to whom a copy was sent;

---

[1] Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

5. The date the Document was created, sent, and received;

6. The type or format of the Document (e.g. email, spreadsheet, PowerPoint, etc.);

7. The Document custodian(s);

8. The Document title or (for emails) subject; and

9. The basis for the assertion of privilege, including a general description of the privileged information.

(ii) The producing party shall indicate, on the privilege log or otherwise in a list delivered with the privilege log, which individuals listed on the log are attorneys, and any persons working at the direction of attorneys, including, but not limited to, paralegals and support staff.

(iii) A single Document containing multiple email messages (i.e., in an email chain) may be logged as a single entry. A Document family (e.g., email and attachments) may be logged as a single entry so long as the log entry accurately describes both the email and its attachment(s).

(iv) The Parties are not required to log Documents created for purposes of prosecuting or defending the Action.

(v) Upon any party's challenge to a claim of privilege, or to challenge a failure to provide a complete privilege log, the parties shall promptly meet and confer to attempt to resolve the issue(s) prior to raising any unresolved issue(s) with the Court. If they cannot agree, pursuant to Local Civil Rule 37.2 as modified by Section III.C.3 of the Court's Individual Rules and Procedures for Civil Cases, the Parties must request a conference with the Court before any motions may be filed.

3. **SCOPE OF ESI**

In accordance with Rule 26(b)(1), this ESI Protocol limits the scope of discovery to proportional sources of data. Proportional sources include discovery regarding any non-privileged matter that is relevant to any Party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information unrelated to the claims and defenses in this matter is outside the scope of Rule 26(b)(1) and need not be produced. Proportional sources only include discovery of ESI that is reasonably accessible.

Proportional sources do not include ESI that is not reasonably accessible—such as, orphaned data or materials retained in tape, floppy disk, optical disk, or similar formats primarily for back-up or disaster recovery purposes as well as archives stored on computer servers, external hard drives, notebooks, or personal computer hard drives that are not used in the ordinary course of a Party's business operations (e.g. archives created for disaster recovery purposes). Absent a showing of good cause by the requesting party, the categories of ESI identified in Schedule A attached hereto need not be searched, collected, or preserved.

4. **SPECIFIC DISCOVERY ISSUES**

   (a)   **Search Methodology.**

   (i)   **System and Executable Files.** Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Additional culling of file types

based on file header information may include, but are not limited to: Application Package File, Backup Files, Batch Files, Binary Disc Image, C++ File Formats, Cascading Style Sheet, Configuration Files, Database Files, Dictionary Files, Dynamic Link Library, Event Log Files, Executables Files, Hypertext Cascading Stylesheet, Java Archive Files, JavaScript Files, JavaScript Source Code and Class Files, Macintosh Resource Fork Files, MP3 Files, MP4 Files, Package Manager Files, Program Files, Program Installers, Python Script Files, Quicktime Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, TrueType Font Files, Video Media Files, Waveform Audio File Format, Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, and Windows System File.

        (ii)     **Duplicates.** A party is required to produce only a single copy of a responsive document, and a party may de-duplicate responsive ESI across custodians. To the extent any email is produced, a party may also de-duplicate email threads and attachments as follows: In an email thread, only the most evolved responsive email in a thread will be produced. Where an earlier-in-thread email has a responsive attachment not contained within the most evolved responsive email, the most evolved earlier-in-thread email containing the attachment will also be produced along with its attachment.

        (iii)     **Technology Assisted Review.** A Party may use Continuous Active Learning and/or Technology Assisted Review (collectively referred to as "TAR") to sort and prioritize documents for review, and as appropriate, limit the volume of documents subject to review and production. A Party may use TAR in conjunction with search terms or may use TAR without regard to search terms, whether search terms were agreed upon or not, particularly to balance proportionality concerns.

(b)     **Format.** ESI and non-ESI shall be produced to the requesting party in the formats described in Schedule B. If particular documents warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. The Parties agree not to degrade the searchability of documents as part of the document production process.

5.  **MODIFICATION**

(a)     This Order may be modified by the Parties or by the Court for good cause shown. Any such modified order will be titled sequentially as follows: "FIRST MODIFIED STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION."

Dated: August 31, 2023                                    SO ORDERED:
       New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

6

## SCHEDULE A

1. Deleted, slack, fragmented, or other data only accessible by forensics.

2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3. On-line access data such as temporary internet files, history, cache, cookies, and the like.

4. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

5. Automatically saved versions of documents and emails.

6. Voice messages.

7. Instant messaging and chat application data.

8. Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

9. Electronic data stored on PDAs and mobile devices.

10. Logs of calls made from mobile devices.

11. Video and audio recordings.

12. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

13. Data remaining from systems no longer in use that is unintelligible on the systems in use.

14. Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and disposition of computer equipment.

**SCHEDULE B**

**PRODUCTION FORMAT AND METADATA**

1. **Production Components.** Productions shall include, single page TIFFs or PDFs, Text Files, an ASCII delimited metadata file (.txt, .dat, or .csv) and an image load file that can be loaded into commercially acceptable production software (e.g., Concordance).

2. **Image Load File** shall contain the following comma-delimited fields: BEGBATES/BEGDOC, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT.

3. **Metadata Fields and Metadata File.** Absent a showing of good cause, general ESI productions in response to requests under Federal Rules of Civil Procedure 34 and 45, or compliance with a mandatory disclosure requirement of this Court, shall not include metadata. The parties are only obligated to provide the following metadata for all ESI produced, to the extent such metadata exists. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, and CUSTODIAN. The metadata file shall be delimited according to the following characters:

- Delimiter = ¶ (ASCII:020)
- Text-Qualifier = þ (ASCII:254)
- New Line = ® (ASCII:174)
- Multi-value delimiter - ; (ASCII Code 059)

| Field Name | Field Description |
|---|---|
| BEGBATES/BEGDOC | Beginning Bates number as stamped on the production image |
| ENDBATES/ENDDOC | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| PAGES | The number of pages for a document. |
| CUSTODIAN | Includes the Individual (Custodian) from whom the documents originated and all Individual(s) whose documents de-duplicated out (De-Duped Custodian). |
| SUBJECT | Subject line of email |
| TITLE | Title from properties of document |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| TO | All recipients that were included on the "To" line of the email |
| FROM/AUTHOR | The name and email address of the sender of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| AUTHOR | Any value populated in the Author field of the document properties |
| FILENAME | Filename of an electronic document (Edoc or attachment) |
| DATEMOD | Date an electronic document was last modified or created (format: MM/DD/YYYY) (Edoc or attachment) |

| DATECREATED | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment) |
|---|---|
| FILESIZE | Size (in bytes) of an electronic document (Edoc or attachment) |
| FILEEXTENSION | Suffix to a filename that indicates the file format of its content (Edoc or attachment) |
| NATIVELINK | Native File Link (Native Files only) |
| TEXTLINK | Link to text files |

4. **PRODUCTION FORMATS.** Documents that exist only in hard copy format shall be scanned and produced as PDFs or TIFFs. Unless excepted below, documents that exist as ESI shall be converted and produced either as PDFs or TIFFs, at the sole discretion of the producing party. If a document contains more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

5. **TIFFS.** If documents are produced in TIFF format, single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the appropriate confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). TIFFs shall show all text and images that would be visible to a user of the original documents.

6. **PDFs.** If documents are produced in PDF format, they shall be produced in multiple page, searchable PDF format at a resolution of at least 300 dpi in accordance with the following:
   A. PDF files shall be produced along with Concordance/Opticon image load files that indicate the beginning and ending of each document.
   B. For documents which already exist in PDF format prior to production (i.e., which the producing party receives from a client or third party in PDF format), the producing party may provide them in that same PDF format, whether searchable or non-searchable. For documents converted to PDF format prior to production, the producing party shall make reasonable efforts to convert to searchable PDF.

7. **Text Files.** A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents. All documents shall be produced with a link in the TextLink field.

8. **Parent and child emails.** To the extent it is determined that targeted email/ESI discovery is necessary, the parties shall produce email attachments sequentially after the parent email.

9. **Image Load Files/Data Load Files.** Each TIFF or PDF in a production must be

referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF or PDF files in the production. The total number of documents in a production should match the total number of records in the data load file.

10. **Bates Numbering.** All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.

11. **Confidentiality Designation.** Responsive documents in TIFF or PDF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter.

12. **Redaction Of Information.** If documents are produced containing redacted information, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such data including any metadata therein.

13. **Native File Productions.** A party may produce Microsoft Excel Spreadsheets (.xls and .xslx files) and Computer Aided Design files (.cad, .dxf, and .dwg files) in native format with a bates-stamped slip sheet and appropriate accompanying data referenced in ¶¶ 3-4. To the extent natives are produced, spreadsheets (e.g., MS Excel, Google Sheets) and delimited text files (e.g., comma-separated value (.csv) files and tab-separated value (.tsv) files) shall be produced in either their native format or MS Excel. TIFF or PDF images need not be produced unless the files have been redacted, in which instance such files shall be produced in TIFF or PDF with OCR Text Files. If a file has been redacted, TIFF or PDF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text. A party that receives a document produced as Image Files (as specified above) may make a reasonable request, on a document by document basis, to receive the document in its native format, and upon receipt of such a request, the producing party shall produce the document in its native format.

14. **Proprietary Files.** To the extent a response to discovery requires production of ESI accessible only through proprietary software, the parties should continue to preserve each version of such information. The parties shall meet and confer to finalize the appropriate production format if necessary.

15. **Production Media.** Documents shall be encrypted and produced via secured FTP, on external hard drives, readily accessible computer(s) or other electronic media ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (e.g., "VOL001," "VOL002"), as well as the volume of the material in that production (e.g., "-001," "-002"). Each piece of Production Media shall also identify: (1) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media; and (4) the set(s) of requests for production for which the documents are being produced.