UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Jennifer Palmer,

                    Plaintiff,

          v.

eCapital Corp. et al.,

                    Defendants.

23 Civ. 4080 (DEH)

**OPINION
AND ORDER**

DALE E. HO, United States District Judge:

Plaintiff Jennifer Palmer brings this action against Defendants eCapital Corp. ("eCap"), eCapital Asset Based Lending Corp. ("ABL"), Marius Silvasan, Jonathan Staebler, Steve McDonald, and Cris Neely, claiming sex-based employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"); the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq*. ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq*. ("NYCHRL"). *See generally* Am. Compl., ECF No. 57. She also claims that Silvasan, McDonald, Staebler, and Neely aided and abetted the discrimination and retaliation to which she was subjected, in violation of the NYSHRL and NYCHRL. Am. Compl. ¶¶ 212, 232.

Before the Court is Defendants' Rule 56(a) Motion for Summary Judgment. For the reasons discussed below, Defendants' Motion is **DENIED** as to all claims.

## BACKGROUND

The following facts are taken from the parties' Rule 56.1 statements and evidentiary submissions in connection with Defendants' motion. The facts are either undisputed or, if disputed, resolved in the light most favorable to Plaintiff as the non-moving party, with all reasonable inferences drawn in her favor. *See Horn v. Med. Marijuana, Inc.*, 80 F.4th 130, 135

(2d Cir. 2023), *aff'd and remanded,* 605 U.S. 593 (2025).  The Second Circuit has emphasized that in the context of employment discrimination, the Court is "required to accept all sworn statements by [Plaintiff] as to matters on which she [is] competent to testify, including what she did, what she observed, and what she was told by company managers."  *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 46 (2d Cir. 2019).

### A.  The Parties

Defendant ABL is a financial services company incorporated in New York.  Defendant eCap is the holding company that controls ABL.  Silvasan is eCap's chief executive.  Staebler is eCap's Senior Counsel and former General Counsel.  McDonald is a member of ABL's Board of Directors, former president of eCap, and former vice president of ABL.  Neely was eCap's CFO from 2011 until July 2024, a member of ABL's Board from March 2017 to July 2024, and former Director of ABL.  Defs.' Rule 56.1 Stmt. ("Def Stmt.") ¶¶ 1-6, ECF No. 104; Pl.'s Rule 56.1 Counterstmt. ("Pl. Stmt.") ¶¶ 1-6, ECF No. 124.

eCap acquired ABL in March 2017, and ABL is currently one of multiple business units under eCap's control.  Prior to its acquisition, ABL was named Gerber Finance, Inc. ("GFI").  In 2006, Gerald Joseph, the founder and then-CEO of GFI hired Palmer as a vice president.  Palmer was promoted to senior vice president in 2011 and president in 2013.  Def. Stmt. ¶¶ 8-11; Pl. Stmt. ¶¶ 8-11, 175.

After eCap acquired GFI, Joseph remained as CEO and Palmer as President.  Def. Stmt. ¶ 12; Pl. Stmt. ¶ 12.  Palmer was promoted to CEO of GFI, effective January 1, 2020.  Defendants assert that Silvasan promoted Palmer to CEO.  Def. Stmt. ¶ 12.  Palmer contends that Joseph selected Palmer for promotion to the CEO role.  Pl. Stmt. ¶ 12.

The parties disagree as to Palmer's qualifications and performance as CEO of GFI.  Palmer asserts that she led GFI successfully from her promotion as CEO in 2020 to her termination in

2

2022. Pl. Stmt. ¶¶ 195-200. Her compensation as CEO increased annually. *Id.* ¶ 201. Defendants proffer testimony that GFI's profits and book of business struggled during Palmer's leadership. Def. Stmt. ¶¶ 17, 49, 81. In 2020, eCap proposed a corporate rebranding process for GFI. Def. Stmt. ¶ 39; Pl. Stmt. ¶ 39. Palmer asserts that she was amenable and cooperative with the rebranding process. Pl. Stmt. ¶¶ 208-12. Defendants contend that Palmer resisted and delayed the rebranding process. Def. Stmt. ¶¶ 39-41.

### B. Alleged Disparate Treatment and Retaliation

The claims at issue arise from Palmer's allegations that Defendants subjected her to disparate treatment and retaliation during her time as CEO, culminating in her termination in December, 2022. Defendants deny these allegations, maintaining there is no evidence of disparate treatment, and that any adverse employment action, including Palmer's termination in 2022, was due to corporate restructuring and the poor performance of her business unit under her leadership. *Id.* ¶¶ 155, 164.

Palmer maintains that, after her promotion to CEO of GFI in 2020, Defendants treated her differently because of her gender. Palmer testified at her deposition that Silvasan subjected her to a higher degree of scrutiny than her predecessor, Joseph, and she points to statements in Silvasan's deposition testimony that she argues confirm this point. Pl. Stmt. ¶ 193-94. She attests that Defendants excluded her from discussions about business strategy and emails about the company's financials. *Id.* ¶ 202. She also attests that Defendants afforded greater opportunities and a higher line of credit approval to Brian Cuttic, a male colleague hired as CEO of a similar business unit under eCap's umbrella. *Id.* ¶¶ 216-22, 242-44.

Palmer also notes demographic trends at eCap that she argues are probative of gender discrimination. Palmer notes that, other than her, all business leads at eCap were men. *Id.* ¶ 186. She notes that there are a dozen men and two women among eCap's c-suite executives, and that

those women are not in charge of business operations. *Id.* She notes that at the time she became CEO of GFI, eCap's senior management team and executive credit committee was comprised only of men. *Id.* In March, 2022, Palmer emailed Silvasan to raise concerns about disparate treatment based on her gender. *Id.* ¶ 245. She attests that Silvasan dismissed her concerns, *id.* ¶ 246, and that following her complaint, eCap withdrew an employment agreement it had offered to her, replacing it with an offer that included materially worse terms. *Id.* ¶¶ 247-54. In September, 2022, Palmer filed a lawsuit against eCap in New York State Court, alleging state law claims of gender discrimination and retaliation. *Id.* ¶ 270. She maintains that McDonald, Silvasan, Neely, and Staebler were aware of and strongly disapproved of her filing the lawsuit. *Id.* ¶¶ 270, 273. In December, 2022, Defendants terminated Palmer's employment. *Id.* ¶ 278. She maintains that her termination was in retaliation for her complaints. *Id.* ¶ 284.

Defendants deny ever subjecting Palmer to disparate treatment or retaliation. Def. Stmt. ¶ 13. Citing email correspondence between Silvasan and Palmer, and Joseph's deposition statements about GFI, Defendants maintain that to the extent that Silvasan and eCap scrutinized Palmer in her role as CEO, it was due to legitimate concerns about GFI's performance under her leadership. *Id.* ¶¶ 29-31. They proffer Silvasan's deposition testimony that consolidation of GFI and another business unit became necessary because of GFI's poor performance, and Palmer's resistance to the process of rebranding GFI following its acquisition by eCap. *Id.* ¶¶ 84-87. They provide email correspondence between McDonald and Palmer in which McDonald states that the revised employment agreement presented to Palmer following her complaints of discrimination was materially similar to those of her peers. *Id.* ¶ 123. And they cite Silvasan's deposition statements that Palmer's ultimate termination was due to the consolidation of her business unit with another, not because of any discriminatory or retaliatory motive. *Id.* ¶¶ 154-55.

4

## LEGAL STANDARD

Defendants bring their Motion for Summary Judgment under Rule 56(a) of the Federal Rules of Civil Procedure.[1]  Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."  *Goenaga v. Mar. of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23).

In ruling on a motion for summary judgment, the court must view all evidence "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Mil. & Naval Affs*, 373 F.3d 83, 89 (2d Cir. 2004), and must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson*, 680 F.3d at 236.  But the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996).  "Affidavits submitted in support of

---

[1] All references to Rules are to the Federal Rules of Civil Procedure.  In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

or in opposition to the summary judgment motion must 'be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

### I.   Employment Discrimination

Employment discrimination claims brought under Title VII, the NYSHRL, and the NYCHRL are subject to the burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, "[a] plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006). For the reasons that follow, Defendants' Motion for Summary Judgment on Palmer's claims of employment discrimination is **DENIED**.

### A.  Prima facie case of Discrimination.

A plaintiff establishes a prima facie case of discrimination by showing that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Banks v. General Motors, LLC*, 81 F.4th 242, 270 (2d Cir. 2023) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)). "Generally speaking, a plaintiff's burden of establishing a prima facie case in the context of employment discrimination law is minimal." *Collins v. N.Y.C. Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002) (citing *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001).

The first and third elements are not in dispute.  That is, it is undisputed that Palmer is a member of a protected class, and at the very least, her termination was an adverse employment action.  But Defendants argue that Palmer has not established the second and fourth elements of a prima facie case of discrimination.  Specifically, they argue that she has not shown she was qualified for her position, because she did not satisfactorily perform her job duties.  Memorandum of Law in Support of Defendants' Motion for Summary Judgment at 6, ECF No. 106 ("Def. Memo").  They also argue that she has not shown circumstances giving rise to an inference of discrimination, because she has not shown that any of Defendants' alleged offending conduct relates to her gender.  *Id.* at 8-12.

### 1.    Whether Palmer was Qualified for Her Position.

A plaintiff's burden to establish they were qualified for a position is "de minimis." *Gregory v. Daly*, 243 F.3d 687, 697 FN 9 (2d Cir. 2001). "[A]ll that is required is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that [s]he satisfied the employer." *Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 92 (2d Cir. 2001).  A plaintiff may meet the qualification prong of their prima facie case by showing they were continuously employed and promoted by their employer.  *See Gregory*, 243 F.3d at 697 (qualification prong met where plaintiff was employed for ten years and successively promoted to higher positions).  It is undisputed that, until her termination, Palmer was continuously employed by GFI starting in July, 2006, and promoted multiple times.  Def. Stmt. ¶¶ 8-9; Pl. Stmt. ¶¶ 8-9. Following eCap's acquisition of GFI in March, 2017, Palmer's salary was increased in 2019, and she was promoted to CEO effective January, 2020.  Def. Stmt. ¶¶ 12, 15; Pl. Stmt. ¶¶ 12, 15.  These undisputed facts are sufficient for Palmer to meet the minimal burden required for the qualification prong of her prima facie case.

### 2. Causation

A plaintiff's burden to establish an inference of discrimination sufficient for their prima facie case is "not onerous." *Banks v. General Motors, LLC*, 81 F.4th 242, 270 (2d Cir. 2023) (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Because there is rarely direct evidence of an employer's discriminatory intent, a plaintiff seeking to make their prima facie case may rely on "circumstantial proof which, if believed, would show discrimination." *Id.* at 259 (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997)).

Defendants argue that Palmer cannot establish circumstances giving rise to an inference of discrimination. Def. Memo at 7. Specifically, they argue that the instances of offending conduct Palmer alleges against Defendants have no connection to her gender, and that her allegations of gender discrimination are therefore conclusory. *Id.* at 8-9. The Court concludes otherwise for several reasons.

First, an employer's history of employing or excluding individuals of a protected class can be probative of discrimination. *See Walsh v. New York City Housing Authority*, 828 F.3d 70, 76-78 (2d Cir. 2016) (the finder of fact could properly consider the lack of women employed as bricklayers as probative of an employer's gender discrimination). Here, it is undisputed that eCap currently employs only men as the most senior executive within each business unit, and that Palmer was the only woman hired to such a role. Pl. Stmt. ¶ 27.

Further, a plaintiff may sufficiently establish an inference of discrimination where they can show that following their termination or demotion, an employer replaced them with an individual outside their protected class. *Littlejohn v. City of New York*, 795 F.3d 297 at 312-13 (2d Cir. 2015). Palmer asserts that this applies to her circumstances, because following her termination, eCap replaced her with Cuttic. Plaintiff's Response in Opposition to Defendants' Memorandum of Law in Support of Motion for Summary Judgement, ECF No. 126 at 13 ("Pl. Memo"). Defendants

8

assert that Palmer was not replaced, but rather that her business unit was merged with Cuttic's following her termination, with Cuttic selected to head the newly consolidated unit. Def. Stmt. ¶¶ 154-55, 157. Whether this was in fact true, or whether Palmer was simply replaced by Cuttic is a genuine issue of material fact inappropriate for resolution at this stage. But even accepting Defendants' characterization of events, the termination of an individual of a protected class, followed by the transfer of their responsibilities to an individual outside of the protected class, is probative of discrimination such that it can establish a Plaintiff's prima facie case. *See Montana v. First Federal Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 105 (2d Cir. 1989) (plaintiff established prima facie case where employee was discharged due to structural reorganization, and responsibilities were transferred to another employee outside of their protected class). Therefore, the undisputed facts support a determination that there are circumstances giving rise to an inference of discrimination.

Accordingly, the Court determines that Palmer has met her minimal burden to establish a prima facie case of gender discrimination against Defendants.

### B. Defendants' Proffered Reasons for Palmer's Termination.

Once a plaintiff has established a prima facie case of discrimination, the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its adverse action. *Bart*, 96 F.4th at 570 (quoting *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 83 (2d Cir. 2015)). Here, Defendants allege that Palmer's termination was due to legitimate, nondiscriminatory reasons. Specifically, they allege that Palmer was terminated because restructuring rendered her position redundant. Def. Memo at 13. They also allege that Palmer's business unit underperformed under her leadership, justifying her termination. *Id.*

"[W]hile a plaintiff may satisfy the third-stage burden under *McDonnell Douglas* by showing that the employer's stated reason was false and just a pretext, or cover, for discriminatory

intent, a plaintiff is not required to demonstrate the falsity of the employer's proffered reason." *Bart v. Golub Corp.*, 96 F.4th 566, 570 (2d Cir. 2024) (citing *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 156 (2d Cir. 2010)).  A plaintiff can prevail "by proving that an impermissible factor was *a* motivating factor, without proving that the employer's proffered explanation was not some part of the employer's motivation." *Id.*  (quoting *Fields v. N.Y. State Off. of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 120 (2d Cir. 1997) (emphasis added)).

Palmer has proffered enough evidence that, if credited, could support a fact-finder's determination that her termination was based on Defendants' discriminatory motive.  *See Kirkland v. Cablevision Systems*, 760 F.3d 223, 225-26 (2d Cir. 2014).

For example, as previously noted, an employer's exclusion of individuals of a protected class can be probative of discrimination.  *See Walsh*, 828 F.3d at 76-78.  The absence of other women hired to lead eCap's business units may be probative of discriminatory animus.  Likewise, as previously noted, the termination and replacement of an employee with or reassignment of their responsibilities to someone outside their protected class can be probative of discrimination.  *See Littlejohn*, 795 F.3d at 312-13; *see also Montana*, 869 F.2d at 105.  A jury could credit Palmer's termination, and the undisputed reassignment of her responsibilities to Cuttic as probative of discriminatory animus.

A jury could also credit Palmer's evidence of disparate treatment compared to Joseph, her predecessor, and Cuttic, her colleague, as well as testimony of disparate treatment experienced by other women at eCap.  Palmer has proffered evidence that following her hiring as GFI's CEO, Silvasan subjected her to a higher level of scrutiny than Joseph, for example, by instituting more frequent meetings to review GFI's financials, Pl. Stmt. ¶ 18, and requesting weekly pipeline reports, *id.* ¶ 31.  She has also proffered evidence that eCap afforded Cuttic preferential treatment, such as a higher level of discretionary credit approval.  *Id.* ¶ 74.  She cites deposition testimony

from a female colleague who also alleges instances of gender-based discrimination. *Id.* ¶ 26; *see Zubulake v. UBS Warburg, LLC*, 382 F. Supp. 2d 536, 544 (S.D.N.Y. 2005) (other employees' testimony of discrimination is relevant to the issue of an employer's discriminatory intent).

Defendants argue that Joseph and Cuttic are not appropriate comparators, and that therefore Palmer cannot cite her disparate treatment relative to them as evidence of discrimination. Def. Memo at 9-12. They argue that Joseph is not an appropriate comparator because he and Palmer led GFI during different time periods, and that at the time of GFI's acquisition, Joseph had significantly more experience than Palmer when she was promoted to CEO. *Id.* at 9. They argue that Cuttic is not an appropriate comparator because he was compensated less than Palmer, and the business unit he led was not the same size and did not share the same industry focus as GFI. *Id.* at 11.

These arguments are unavailing at this stage of the litigation. In proffering comparator evidence, Palmer need only show that Joseph and Cuttic are "similarly situated," and "[share] enough commonalities" with her such that "they *can* serve as adequate comparators." *King v. Aramark Servs., Inc.*, 96 F.4th 546, 563 (2d Cir. 2024) (emphasis added); *see also Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 54 (2d Cir. 2014) ("[W]e [have] made it clear that this rule does not require a precise identicality between comparators and the plaintiff."). Here, Palmer has adduced some evidence that she, Joseph, and Cuttic were all employed by eCap as CEO of GFI or its rebranded successor, ABL, in comparable capacities. That is sufficient at the summary judgment stage to support her assertion that she was similarly situated to them. Ultimately, the final determination of whether Palmer was similarly situated to Joseph and Cuttic, and whether there has been disparate treatment are for the trier of fact. *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000).

Defendants also raise the same actor defense, arguing that there must be a strong inference against their discriminatory or retaliatory intent, because Silvasan both hired and discharged Palmer within a relatively short time span. Def. Memo at 15. Whether the same actor both hired and fired a Plaintiff is "potential[ly] relevan[t]" the question of whether Defendants terminated Palmer based on non-pretextual, non-discriminatory reasons, the Second Circuit has expressly reserved he question whether the same-actor defense, which has been applied to age discrimination claims under the ADEA, also applies in the Title VII context. *See Buon v. Spindler*, 65 F.4th 64, 84-85 (2d Cir. 2023) ("As an initial matter, we have not determined whether the same-actor inference . . . should also apply to claims under Title VII"). And even if the fact that Silvasan both hired and discharged Palmer is a relevant factor, there is no authority for the proposition that it is dispositive. In any event, Palmer disputes whether as a factual matter the same actor defense could even apply here, citing evidence that Joseph, not Silvasan, made the decision to hire her. Pl. Stmt. ¶ 187. This dispute of fact is not properly resolvable at the summary judgment stage.

Defendants also cite evidence that Palmer's business unit underperformed under her leadership, and that her actions, particularly around the rebrand of her business unit, were insubordinate and justified her termination. Def. Memo at 14. But Palmer proffers evidence that disputes these assertions, including her business unit's increasing profits under her leadership, Pl. Stmt. ¶¶ 17, her continued retention and salary increases notwithstanding Defendants' assertions of her unqualifiedness and insubordination, *Id.* ¶ 201, and communications she asserts demonstrate her willingness to facilitate her business unit's rebrand. *Id.* ¶¶ 40, 233.

At the summary judgment stage, the Court must resolve all disputed facts in the light most favorable to Palmer as the non-moving party and draw all reasonable inferences in her favor. *Horn*, 80 F.4th at 135. The Court is also required to accept all of Palmer's sworn statements as true as to matters on which she is competent to testify. *Davis-Garett*, 921 F.3d at 46. Ultimately, Palmer

12

has proffered enough evidence to create a genuine issue of material fact regarding whether Defendants terminated her due to their stated legitimate, nondiscriminatory reasons. Accordingly, Defendants' Motion for Summary Judgment as to Palmer's claims of employment discrimination under Title VII, the NYSHRL, and the NYCHRL is **DENIED**.[2]

## II.    Retaliation

Retaliation claims brought under Title VII, the NYSHRL, and the NYCHRL are also subject to the *McDonnell Douglas* burden-shifting framework. For retaliation claims brought under Title VII, a plaintiff must first "establish a prima facie case of retaliation by showing 1) participation in a protected activity; 2) the defendant's knowledge of the protected activity; 3) an adverse employment action; and 4) a causal connection between the protected activity and the adverse employment action." *Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (internal quotation marks omitted) (citing *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)).

In the context of Title VII, a "protected activity" includes "oppos[ing] any practice made an unlawful employment practice by Title VII, or . . . participat[ing] in any manner in an investigation, proceeding, or hearing under Title VII." *Bermudez v. City of New York*, 783 F. Supp.

---

[2] Because the Court concludes that there is a genuine dispute of material fact as to whether Palmer's termination was for legitimate, non-discriminatory reasons, it need not read the third step of the *McDonnell Douglas* analysis, namely, whether Defendants' proffered reasons were pretextual. The Court notes, however, that there is evidence in the record to support such a determination for purposes of resolving this motion for summary judgment. Defendants have cited evidence that Palmer was terminated because eCap's restructuring rendered her position redundant. Def. Stmt. ¶¶ 153-55. However, Palmer cites evidence that eCap did not make structural changes to her business unit, Pl. Stmt. ¶ 283, but rather pursued the restructuring as a pretext to terminate her employment. *See Montana*, 869 F.2d at 106 ("where, as here, the plaintiff claims . . . that her employer used the structural reorganization as a cover for discriminatory action, a federal court, to ensure that the business decision was not discriminatory, is not forbidden to look behind the employer's claim that it merely exercised a business decision in good faith.").

2d 560, 575 (S.D.N.Y. 2011). An adverse employment action is an action that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 209 (2d Cir. 2006); *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 275 (2d Cir. 2023). A plaintiff bringing a Title VII retaliation claim must also show "but-for" causation, meaning that "the adverse [employment]action would not have occurred in the absence of the [employer's] retaliatory motive." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 91 (2d Cir. 2015). A plaintiff may show causation through "direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018). As with discrimination claims, the Plaintiff's burden of proof at the prima facie stage of a retaliation claim is "minimal." *Zann Kwan*, 737 F.3d at 844.

A plaintiff bringing retaliation claims under the NYSHRL and NYCHRL need not show a formal "adverse employment action." *See Mayers v. Emigrant Bancorp, Inc.*, 796 F. Supp. 2d 434, 446 (S.D.N.Y. 2011). Rather, an employee need only show that her employer engaged in conduct that was "reasonably likely to deter a person from engaging in protected activity." *See Maynard v. Montefiore Med. Ctr.*, No. 18 Civ. 8877, 2021 WL 396700, at *6 (S.D.N.Y. Feb. 4, 2021). A plaintiff must also show that "there was a causal connection between [her] protected activity and the employer's subsequent action." *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 449 (S.D.N.Y. 2018).

"Once [a] plaintiff has established a prima facie showing of retaliation, the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action." *Zann Kwan*, 737 F.3d at 845(citing *United States v. Brennan*, 650 F.3d 65, 93 (2d Cir. 2011)). If the employer articulates a non-retaliatory reason for the adverse employment action, the plaintiff must then show that the defendant's proffered non-retaliatory reason is mere pretext. *Id.*

14

For the reasons that follow, Defendants' Motion for Summary Judgment on Palmer's claims of retaliation is **DENIED**.

### A. Prima Facie Case of Retaliation.

Defendants argue that—whether subject to the but-for requirement of Title VII claims, or the more relaxed requirement of NYSHRL and NYCHRL claims—Palmer cannot show that the adverse employment actions she alleges were caused by Defendants' retaliatory motive. The Court disagrees.

In making their prima facie case, a plaintiff can meet their burden to establish but-for causation by showing temporal proximity between their protected activity and the employer's adverse action. *Zann Kwan*, 737 F.3d at 845. Here, Palmer has proffered evidence that Defendants withdrew her pending employment agreement immediately after receiving her complaints of discrimination. Pl. Stmt. ¶ 248. And it is undisputed that Defendants terminated Palmer's employment less than three months after she filed a discrimination lawsuit in state court. Pl. Stmt. ¶ 278. This temporal proximity is sufficient for Palmer to meet her "minimal" burden to establish causation for a prima facie case of retaliation. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 111 (2d Cir. 2010) (four-month interval between complaint and termination was sufficient for a finding of causation).

### B. Retaliatory Motive.

"Once [a] plaintiff has established a prima facie case of discrimination, the burden then shifts to the employer to articulate[] a non-retaliatory reason for the employment action." *Zann Kwan*, 737 F.3d at 845 (citing *Brennan*, 650 F.3d at 93). If the employer does so, then the burden shifts back to the plaintiff to show why that reason is mere pretext. *Id.* Here, Defendants argue that their revision of Palmer's employment contract was non-retaliatory because it was in direct response to performance issues around the rebranding of her business unit. Def. Memo at 20-21.

15

Defendants also repeat their argument that Palmer's termination was due to restructuring, rather than retaliatory motive. *Id.* As noted above, there is a dispute of fact as to whether Palmer's termination was for legitimate non-discriminatory reasons. Accordingly, summary judgment is inappropriate on her retaliation claim.

But even if the Court were to conclude otherwise, summary judgment would still be inappropriate because Palmer has met her burden on summary judgment to make a showing that Defendants' proffered reasons are pretextual. A plaintiff may show that an employer's proffered non-retaliatory explanations are pretextual by "rely[ing] on evidence comprising her prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment." *Zann Kwan*, 737 F.3d at 847. Palmer has argued that Defendants proffered contradictory explanations for her dismissal. Pl. Memo at 15. Specifically, Palmer points to the potential incompatibility of testimony characterizing her termination as the result of mere restructuring, Pl. Stmt. ¶¶ 278-79, and testimony asserting that she was terminated because of insubordinate behavior. *Id.* A jury could reasonably credit her assertion that these explanations are contradictory, and could therefore determine that they are pretextual.

At the summary judgment stage, the Court must resolve all disputed facts and draw all reasonable inferences in her favor. Accordingly, Defendants' Motion for Summary Judgment as to her retaliation claims under Title VII, the NYSHRL, and the NYCHRL are **DENIED**.

### III.    Aiding and Abetting

Defendants move for summary judgment on Palmer's aiding and abetting claims against Silvasan, McDonald, Neely, and Staebler (the "Individual Defendants"). To establish aiding and abetting liability under the NYSHRL and NYCHRL, a plaintiff need not show that the aider-and-abettor "had an employer-employee or supervisory relationship with the plaintiff." *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020). Rather, the aider and abettor

16

need only have (1) "actually participate[d] in the conduct giving rise to the discrimination," *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004), and (2) "share[d] the intent or purpose of the principal actor." *Fried v. LVI Servs., Inc.*, No. 10 Civ. 9308, 2011 WL 2119748, at *7 (S.D.N.Y. May 23, 2011).

It is undisputed that the Individual Defendants all participated in Palmer's termination. However, the Defendants argue that Palmer has not sufficiently shown that the Individual Defendants had the requisite intent to participate in the alleged discrimination and retaliation. Def. Memo at 28. They note that, to the extent McDonald and Neely participated in the alleged adverse acts, it was only in their capacity as board members to sign off on the resolution terminating Palmer's employment. Def. Stmt. ¶¶ 155, 157. They also note that Staebler's involvement was limited to informing Palmer of her termination in his capacity as eCap's Senior Counsel. Def. Memo at 28. They argue that this involvement does not amount to the "community of purpose" required to establish aiding and abetting liability against McDonald, Neely, or Staebler. *Id.*; *see Fried*, 2011 WL 2119748, at *7.

Defendants are correct that a plaintiff cannot establish aiding and abetting liability under the NYSHRL and NYCHRL if a defendant does not share in the intent or purpose of the alleged wrongful act. *See Xiang v. Eagle Enters., LLC*, No. 19 Civ. 1752, 2020 WL 248941, at *6 (S.D.N.Y. Jan. 16, 2020) (summary judgment granted as to one individual defendant where plaintiff had not sufficiently shown shared intent or purpose). Here, however, Palmer has advanced sufficient evidence to raise a triable issue of fact as to whether the Individual Defendants had sufficient intent or purpose to aid the alleged violations. Defendants understate what the record shows regarding the roles that Staebler, McDonald, and Neely played in the adverse employment acts that Palmer alleges are discriminatory and retaliatory. For example, Palmer has proffered evidence that leading up to her termination, Staebler was aware of her concerns about workplace

17

discrimination, including as they pertained to Palmer's concerns about signing her business unit's audited financials.  Pl. Stmt. ¶¶ 117-19.  She cites McDonald's testimony referring to her state court lawsuit as insubordination, *Id.* ¶ 279, and Neely's similar awareness and negative reaction to the complaints made in that lawsuit.  *Id.* ¶ 270.[3]  Palmer has advanced evidence that every one of the Individual Defendants exercised some degree of authority over her job functions and ultimate termination, *cf. Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d 379, 395 (S.D.N.Y. 2019), and consequently exercised that authority with awareness of her assertions about unlawful discrimination and retaliation.

At the summary judgment stage, the Court must resolve all disputed facts and draw all reasonable inferences in Palmer's favor.  Accordingly, Defendants' Motion for Summary Judgment as to her aiding and abetting claims under the NYSHRL, and the NYCHRL are **DENIED**.

IV.    **Damages**

Defendants argue that Palmer's claims for damages should be limited or dismissed.  Def. Memo at 28.  First, they argue that the after-acquired evidence doctrine precludes Palmer from recovering damages, because Defendants would have immediately terminated her employment based on information discovered during the course of this litigation.  *Id.*  Second, they argue that their good faith effort to comply with antidiscrimination laws precludes the imposition of punitive damages.  *Id.* at 29.  These arguments are unavailing for the reasons below.

---

[3] And although Defendants cannot aid or abet their own conduct, *see Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 367 & n.7 (S.D.N.Y. 2012), Palmer has proffered evidence that a combination of Silvasan's and the other Individual Defendants' conduct resulted in her disparate treatment and retaliation.

18

### A. After-Acquired Evidence Doctrine

Courts may apply the after-acquired evidence doctrine to limit the remedies available in employment discrimination suits. Where after-acquired evidence shows that an employee would have been terminated for lawful reasons, the doctrine precludes certain remedies, such as reinstatement or front pay. *Greene v. Coach, Inc.*, 218 F. Supp. 2d 404, 412 (S.D.N.Y. 2002) (citing *McKennon v. Nashville Banner Pub'g Co.*, 513 U.S. 352, 360-61 (1995)). It is the employer's burden to establish that the discovered wrongdoing "was of such severity that the employee would have been terminated on such grounds alone if the employer had known of it at the time of discharge." *Id.* An employer must show that an employee's discovered wrongdoing "would *actually* have been a basis for termination." *Mugavero v. Arms Acres, Inc.*, 680 F. Supp. 2d 544, 570 (S.D.N.Y. 2010) (cleaned up) (citing *Greene*, 218 F. Supp. 2d at 413). It is insufficient to argue that an employee may have been terminated based on discovered wrongdoing.

Defendants argue that Palmer's use of profanity and vulgarities would have justified her termination, because of eCap and GFI's employment policies requiring professional courtesy. Def. Memo at 29. However, Defendants' argument is unavailing because they do not proffer any evidence showing, for example, that eCap or GFI have terminated any other employee for similar conduct. *See Mugavero*, 680 F. Supp. 2d at 572. In fact, as Palmer notes, the record evidence shows instances of other eCap employees using profane language, including in Silvasan's presence without discipline. Pl. Memo at 27-28.

At this stage, Defendants have not met their burden to show that the after-acquired evidence doctrine applies to limit recovery in this case.

**B. Good Faith Compliance**

Defendants argue that their internal practices and procedures designed to comply with existing antidiscrimination laws preclude Palmer's claim for punitive damages. Def. Memo at 29. The Court disagrees.

Whether or not Palmer is ultimately entitled to punitive damages is a triable question of fact. "[W]here [a] factfinder has found in a plaintiff's favor that the defendant engaged in . . . prohibited discrimination, punitive damages may be awarded . . . if the defendant has been shown to have acted with a state of mind that makes punitive damages appropriate." *Cush-Crawford v. Adchem Corp.*, 271 F.3d 352, 359 (2d Cir. 2001). The mere existence of practices and procedures promoting compliance with applicable antidiscrimination law does not per se preclude a determination that Defendants' state of mind justifies the imposition of punitive damages.

Accordingly, preclusion of punitive damages is inappropriate at this stage of the case.

## CONCLUSION

For the reasons discussed herein, Defendants' motion for summary judgment is **DENIED**.

The Clerk of Court is respectfully requested to terminate ECF No. 103.

SO ORDERED.

Dated: February 23, 2026

New York, New York

_____

DALE E. HO
United States District Judge

20